NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LADDIE JONES,<br><br>      Plaintiff,<br><br>      v.<br><br>NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,<br><br>      Defendant. | No. 17 C 05646<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laddie Jones filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). 42 U.S.C. §§ 405(g), 423 *et. seq,* 1381 *et seq.* The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on September 3, 2014, alleging that he became disabled on February 2, 2014, due to headaches, dizziness, eye impairment,

---

[1]Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

difficulty hearing, painful arms, and weakness. (R. at 230, 232). The applications were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 82, 95, 111, 126, 170–73). On October 20, 2016, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 49–81). The ALJ also heard testimony from Amiee Mowery, a vocational expert (VE). (*Id.*). The ALJ denied Plaintiff's request for benefits on December 14, 2016. (*Id.* at 33–44). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 2, 2014. (*Id.* at 36). At step two, the ALJ found that Plaintiff's traumatic brain injury, cognitive disorder, psychotic disorder, intermittent explosive disorder, alcohol abuse disorder, headaches, and injuries sustained in a motor vehicle accident, including a right facial injury to his eye resulting in a loss of vision of his right eye were severe impairments. (*Id.* at 36). At step three, the ALJ determined that Plaintiff's impairments, including substance abuse disorder, meets listing sections 12.02, 12.04, and 12.09. (*Id.*). Further, the ALJ found that if Plaintiff stopped alcohol use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments. (*Id.* at 37). However, the ALJ concluded that if Plaintiff stopped alcohol use, he would not have an impairment or combination of impairments that meets or medically equal the severity of any of the listings enumerated in the regulations. (*Id.*). The ALJ then assessed Plaintiff's

Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform medium work, except:

> [H]e can perform frequent balancing. He may have no more than occasional exposure to hazards such as dangerous, moving machinery or unprotected heights. He lacks the ability to understand, remember, and carry out detailed instructions because of moderate limitations in concertation, but retains the sustained concertation necessary for simple work of a routine type if given normal workplace breaks, meaning two 15 minute breaks after two hours of work and a 30 minute break mid-shift. He may occasionally work in coordination with or [in] proximity to others. Because of moderate difficulties with social functioning, he may only engage in brief and superficial contact with the general public. He should not be expected to set goals or make plans independent of others. [He] has limited peripheral vision on his right side and can only gauge depth perception occasionally. He can only occasionally perform work requiring visual accommodations.

(R. at 39). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 42). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the local economy that Plaintiff can perform, including cleaner II, dryer attendant, and hand packager. (*Id.* at 42–43). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through the date of the ALJ's decision. (R. at 43–44). The Appeals Council denied Plaintiff's request for review on July 5, 2017. (R. at 1–3). Plaintiff now seeks judicial review of

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's arguments that the ALJ (1) erred in evaluating Plaintiff's subjective allegations; and (2) erred in concluding that Plaintiff's alcohol dependence materially affected his mental impairments.[3]

**A. The ALJ's Evaluation of Plaintiff's Subjective Allegations**

Because an RFC assessment will often "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Plaintiff's argument that the ALJ

---

[3] Because the Court remands on these bases, it need not address Plaintiff's other arguments at this time.

5

improperly analyzed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Social Security Administration determined that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." Social Security Regulation (SSR) 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify

6

the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p * 4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

7

In this case, the Court finds that the reasons provided by the ALJ for rejecting Plaintiff's subjective symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

First, the ALJ improperly discounted Plaintiff's subjective complaints because of "inconsistent treatment" and "noncompliance with his medication regimen," (R. at 40), without taking into account Plaintiff's lack of insurance. It is well-settled that an ALJ may not simply rely on a lack of treatment to discount Plaintiff's symptom allegations. *Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir.2012). Instead, the ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. *Id.*; SSR 96–7p, 1996 WL 374186, at *7; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016); *see also Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). The SSA "has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment." *Roddy v. Astrue,* 705 F.3d 631, 638 (7th Cir. 2013); Social Security Ruling (SSR) 16-3p at *9 ("An individual may not be able to afford treatment and may not have access to free or low-cost medical services.").

Here, the ALJ was put on notice of Plaintiff's inability to afford treatment through the record and Plaintiff's testimony. At the hearing, Plaintiff testified that he did not have the money to afford treatment and did not have insurance. (R. at 63). This is corroborated by treatment notes, the consultative examination, and function reports, indicating that Plaintiff has been homeless and unable to afford

8

medications or treatment. (Id. at 283–90, 308–15, 333–40, 343, 408). Nevertheless, the ALJ erroneously concluded that there was "no evidence" in the record that Plaintiff could not obtain more medicine if he sought it. (*Id.* at 40). Accordingly, the Court finds that the ALJ improperly drew a negative inference from lack of treatment without taking into account Plaintiff's documented inability to afford treatment.

In addition, the ALJ appears to discount Plaintiff's allegations on the basis of his daily activities, noting that Plaintiff played video games, could shop, and could do laundry. (R. at 40). While it is permissible for an ALJ to consider a claimant's daily activities when assessing a claimant's symptom allegations, the Seventh Circuit has repeatedly admonished ALJs not to place "undue weight" on those activities. *Moss,* 555 F.3d at 562; *see Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace."); *Mendez v. Barnhart,* 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy,* 705 F.3d at 639. Here, the ALJ did not adequately explain *how* Plaintiff's ability to perform limited household activities undermines his subjective complaints. *See Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (finding that the ALJ should have explained the purported

9

inconsistencies between the claimant's daily living activities, his complaints of pain, and the medical evidence); *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Nor does the ALJ take into account Plaintiff's limitations in performing those daily activities, such as frequently being asked to leave stores when shopping because of instigating arguments with other customers while waiting in line. (R. at 61–62). *See Moss*, 555 F.3d at 562 ("An ALJ cannot disregard a claimant's limitations in performing household activities.")

Defendant acknowledges that the ALJ erred by not inquiring about Plaintiff's reasons for not seeking treatment, but argues that this error was harmless because the ALJ offered other valid reasons for discrediting Plaintiff's allegations. (Def.'s Resp., Dkt. 18 at 12). While it is true that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are," *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original), here, the ALJ did not provide "enough" valid reasons for discounting Plaintiff's symptom statements. *See Ghiselli*, 837 F.3d at 778 ("The ALJ's unsupported judgments regarding [Plaintiff's] ability to perform the activities of daily living and [his] statement that [he] was looking for a new job are not the sort of credibility determinations entitled to deference."); *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) ("Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that [claimant] was incredible."). The errors set forth above are significant enough that the Court cannot confidently say that the ALJ

would have made the same evaluation of Plaintiff's symptom statements had she not made these errors. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("The administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative.").

For these reasons, the ALJ failed to "build an accurate and logical bridge from the evidence" to her conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted); *see also McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) ("[T]he ALJ must explain her [credibility] decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record."). The Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's symptom allegations, which is an error requiring remand. Although the Court does not hold that the ALJ should have found Plaintiff's subjective allegations fully supported, the foundation underlying her negative assessment was inadequate. Greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski*, 245 F.3d at 888.

### B. The ALJ's Conclusion that Alcohol Dependence was a Material Factor in Plaintiff's Disability

The ALJ also concluded that Plaintiff's alcohol dependence materially affected his mental impairments. (R. at 36–37). After careful review, the Court finds that the ALJ's determination is not supported by substantial evidence.

The key factor to determining whether alcoholism is a contributing factor material to a disability determination "is whether [Social Security] would still find a claimant disabled if she or she stopped using drugs or alcohol." SSR 13–2p, at *4. However, the ALJ cannot make a materiality determination unless there is "medical evidence from an acceptable medical source establishing that a claimant has a Substance Abuse Disorder." *Id.* Further, self–reported alcohol use does not by itself establish a substance abuse disorder. *Id.* at *10. Instead, there must be "objective medical evidence—that is, signs, symptoms, and laboratory findings— from an acceptable medical source that supports a finding that a claimant has [a substance abuse disorder]." *Id.*

Here, the ALJ makes unsupported claims without building an accurate and logical bridge from the evidence to her conclusion that Plaintiff would not be disabled in the absence of his alcohol use. For instance, the ALJ concluded that Plaintiff's inability to manage his funds was related to alcohol abuse as opposed to mental health issues. (R. at 41). However, none of the medical sources reach this conclusion, and the ALJ does not cite to evidence to support this conclusion. Further, the ALJ concluded that "[u]nder the influence of alcohol, claimant has developed a psychotic disorder," (*Id.* at 37), citing to a consultative examination, performed on November 18, 2014 by Barbara Sherman, Psy.D. (*Id.* at 406). However, Dr. Sherman's diagnoses, which the ALJ gives "great weight," (*Id.* at 42), included psychotic disorder, not otherwise specified, and alcohol abuse disorder, long time *remission* alleged. (*Id.* at 412). Dr. Sherman indicated that Plaintiff

"acknowledged a period of alcohol abuse, during a time of hopelessness, and was then treated with a Rehabilitation Program." (*Id.* at 413). The doctor also explained that Plaintiff reports visual hallucinations and hearing voices "[a]ll the time." (*Id.* at 410). Nowhere in the report does Dr. Sherman indicate that the psychotic disorder was attributable to alcohol use or would be resolved in the absence of alcohol use as the ALJ suggests. "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870; *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (finding error when ALJ mischaracterized the medical evidence); *Terry v. Astrue*, 580 F.3d 471, 477–488 (7th Cir. 2009) (same).

In sum, the Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's symptom statements or for finding that alcohol dependence was a material factor in Plaintiff's disability, which are errors requiring remand. On remand, the ALJ shall reassess Plaintiff's subjective symptom statements with due regard for the full range of medical evidence, following the requirements of SSR 16-3p. The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a

VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed.

## VI. CONCLUSION

For the reason's stated above, Plaintiff's Motion for Summary Judgment [Dkt. 13] is **GRANTED** and Defendant's Motion for Summary Judgment [Dkt. 17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: August 10, 2018

MARY M. ROWLAND
United States Magistrate Judge